**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Equal Employment<br>Opportunity Commission<br>   10 S. Howard St., 3rd Floor<br>   Baltimore, MD 21201<br>       Plaintiff,<br><br> v.<br><br>Kmart Corporation;<br>Sears Holdings Management Corporation;<br>Sears Holdings Corporation<br>   6411 Riggs Road,<br>   Hyattsville, MD 20783<br>       Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action brought under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Lorenzo Cook who was adversely affected by such practices.  As is alleged with greater particularity in the Statement of Claims below, Kmart Corporation, Sears Holdings Management Corporation, and Sears Holdings Corporation discriminated against Mr. Cook in violation of the ADA when, following an offer of employment, the companies refused to accommodate Mr. Cook in their mandatory drug screening process, resulting in the withdrawal of Mr. Cook's offer of employment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil

Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in the United States District Court for the District of Maryland as the employment practices alleged to be unlawful were committed within the jurisdiction of this Court. *See* 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1), (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4. Sears Holdings Corporation is a Delaware corporation headquartered in Illinois that has continuously had at least 15 employees.

5. At all relevant times, Sears Holdings Corporation has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

6. At all relevant times, Sears Holdings Corporation has been a "covered entity" under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

7. Sears Holdings Corporation operates retail stores and online retail services through its wholly owned subsidiaries of Sears, Roebuck and Company and Kmart Corporation.

8. Kmart Corporation is a Michigan corporation headquartered in Illinois. Kmart Corporation operates retail stores throughout the country, including a retail store located at 6411 Riggs Road, Hyattsville, MD 20783, and has continuously had at least 15 employees.

9. At all relevant times, Kmart Corporation has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

10. At all relevant times, Kmart Corporation has been a "covered entity" under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

11. Kmart Corporation is a wholly owned subsidiary of Sears Holdings Corporation.

12. Sears Holdings Management Corporation is a Delaware corporation headquartered in Illinois that has continuously had at least 15 employees.

13. At all relevant times, Sears Holdings Management Corporation has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

14. At all relevant times, Sears Holdings Management Corporation has been a "covered entity" under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

15. Sears Holdings Management Corporation is a wholly owned subsidiary of Sears Holdings Corporation.

16. Sears Holdings Management Corporation provides corporate, administrative and human resources services to Sears Holdings Corporation and its operating subsidiaries, including Kmart Corporation.

17. Upon information and belief, the operational entanglement of Kmart Corporation and Sears Holdings Corporation includes Sears Holdings Corporation's control and direction of Kmart Corporation's human resources and labor relations functions, including, without limitation, the formulation of personnel policies and procedures, including the relevant mandatory drug screening policy.

18. Upon information and belief, the operational entanglement of Kmart Corporation and Sears Holdings Management Corporation includes Sears Holdings Management Corporation's control and direction of Kmart Corporation's human resources and labor relations functions, including, without limitation: the administration of personnel policies and procedures; the provision of human resources guidance, oversight, and services, including the handling of administrative charges and investigations; and contracting for the provision of third-party personnel services for Kmart Corporation, including the relevant mandatory drug screening.

19. Upon information and belief, Kmart Corporation's actions and decisions constituting the alleged violations of the ADA were taken at the direction of or in consultation with Sears Holdings Management Corporation and/or Sears Holdings Corporation.

20. Sears Holdings Corporation, Kmart Corporation and Sears Holdings Management Corporation (herein collectively "Defendant") are an integrated and/or single employer under the ADA.

## STATEMENT OF CLAIMS

21. All conditions precedent to the institution of this lawsuit have been fulfilled.  More than thirty days prior to the institution of this lawsuit, Mr. Cook filed a Charge of Discrimination with the EEOC alleging violations of the ADA by Defendant.  After the parties participated in the EEOC's investigative process, the EEOC issued a Letter of Determination notifying Defendant

that there was reasonable cause to believe that it had violated the ADA through unlawful employment actions, including its failure to accommodate or hire Mr. Cook. The EEOC then endeavored to eliminate the unlawful employment practices through informal methods of conciliation, conference, and persuasion. After these efforts were unsuccessful, the EEOC so notified the parties and proceeded with the commencement of this lawsuit.

## Discrimination in Violation of the ADA

22. Since at least January 2010, Defendant has engaged in unlawful employment practices in violation of Sections 102(a) and (b) of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b). These practices include the failure to provide Mr. Cook with a reasonable accommodation during Defendant's mandatory drug screening, and Defendant's refusing to employ Mr. Cook because of the need to make such accommodation and/or on the basis of his disability.

23. Mr. Cook was diagnosed with End Stage Renal Disease in or about 1999.

24. End Stage Renal Disease is a condition involving the failure of the normal operation of the kidneys to the extent that, generally, dialysis and/or a transplant are required.

25. Mr. Cook commenced routine dialysis treatment in 1999, which involves 3 to 4 hour dialysis treatments 3 times per week. These treatments continued through the period of Mr. Cook's attempted employment with Defendant.

26. Mr. Cook's End Stage Renal Disease is an impairment that substantially limits one or more of his major life activities, including but not limited to, performing manual tasks, eating, sleeping and physical activities.

27. Mr. Cook's End Stage Renal Disease is an impairment that substantially limits one or more of his major bodily functions, including but not limited to, the operation of the urinary or renal

system and the bodily functions of the processing, regulating and filtering of fluids, the removal of toxins, and the creation of hormones.

28. At all relevant times, Mr. Cook's End Stage Renal Disease qualified as a disability within the meaning of the ADA, as amended, 42 U.S.C. § 12102(1)(A).

29. On or about January 19, 2010, Mr. Cook submitted an application for employment with Defendant as a Customer Service Associate ("Associate") at Defendant's Hyattsville store.

30. At the time of his application, Mr. Cook possessed his GED and a diploma from Lincoln Tech in Automotive Technology and Mr. Cook was qualified for the Associate position.

31. At all relevant times, Mr. Cook was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12111(8).

32. Mr. Cook's application was reviewed by Belva Benbow, Defendant's hiring official.

33. In early February, 2010, Ms. Benbow scheduled and conducted an interview with Mr. Cook at Defendant's Hyattsville store.

34. Several days after the interview, Ms. Benbow contacted Mr. Cook and informed him that he had been selected for employment and was being offered an Associate position at the Hyattsville store.

35. In or about mid-February, 2010, Ms. Benbow asked that Mr. Cook come to the Hyattsville store to process his new-hire paperwork and to arrange a drug screening.

36. Defendant administers a mandatory drug screening procedure whereby all offerees must successfully pass a urinalysis prior to commencing employment.

37. Mr. Cook met with Ms. Benbow at the Hyattsville store as scheduled. During their meeting, Mr. Cook informed Ms. Benbow that he suffered from kidney failure and that, because of his disease and treatment (dialysis), he was unable to produce urine for a urinalysis.

38. Mr. Cook expressed his willingness to submit to a drug test and inquired about such reasonable accommodations as hair, blood or other non-urine forms of drug testing.

39. Ms. Benbow responded that she would need to inquire with colleagues about the accommodation of non-urine drug testing and that she would contact Mr. Cook.

40. In or about early March, 2010, Ms. Benbow contacted Mr. Cook and, without engaging in the interactive process, informed him that he would not be permitted to take any alternate non-urine drug tests because it was Defendant's policy that all new-hires complete the standard urine test provided at the company's contracted facility.  Ms. Benbow informed Mr. Cook that if he could not complete this urinalysis, Defendant would not employ him.

41. Defendant denied Mr. Cook employment.

42. The effect of the practices complained of in paragraphs 29-41 have been to deprive Mr. Cook of equal employment opportunities and otherwise adversely affect his employment status on the basis of his disability and/or the need to accommodate his disability.

43. The unlawful employment practices complained of herein were intentional and were done with malice or with reckless indifference to Mr. Cook's federally protected rights.

44. The effects of the unlawful employment practices complained of herein have been to inflict emotional pain, suffering and inconvenience upon Mr. Cook and to deprive him of the financial and other benefits of employment with Defendant.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

    A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability

discrimination against applicants and employees, and engaging in any other employment practices that discriminate on the basis of disability.

  B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities, and that eradicate the effects of its past and present unlawful employment practices.

  C. Order Defendant to make Mr. Cook whole by providing appropriate back pay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to the instatement of Mr. Cook or providing him front pay in lieu thereof.

  D. Order Defendant to make Mr. Cook whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

  E. Order Defendant to make Mr. Cook whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional and mental anguish, pain and suffering, stress, humiliation and frustration in amounts to be determined at trial.

  F. Order Defendant to pay Mr. Cook punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

  G. Grant such further legal or equitable relief as the Court deems necessary and proper to the public interest.

H.   Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN REAMS
Associate General Counsel

_____/s/_____
DEBRA M. LAWRENCE Bar No. 04312
Regional Attorney
(*signed by Thomas Rethage with permission of Debra M. Lawrence*)

_____/s/_____
MARIA LUISA MOROCCO Bar No. 24357
Supervisory Trial Attorney
(*signed by Thomas Rethage with permission of Maria L. Morocco*)

_____/s/_____
THOMAS D. RETHAGE, JR. Bar No. 96035
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market St., Suite 1300
Philadelphia, PA 19107
thomas.rethage@eeoc.gov
Phone: 215.440.2683
Fax: 215.440.2848

Date: September 5, 2013